Curtis **JAMES**

v.

**CAPITAL CITY PRESS.**

**Civ. A. No. 89–234–B.**

United States District Court, M.D. Louisiana.

July 27, 1990.

Charles L. Elloie, New Orleans, La., for plaintiff.

William A. Norfolk, Taylor, Porter, Brooks and Phillips, Baton Rouge, La., for defendant.

## RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

POLOZOLA, District Judge.

Curtis James filed this suit against Capital City Press (CCP) to recover damages for race and age discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e et seq., and the Age Discrimination in Employment Act, 29 U.S.C. 621, et seq. James contends he had worked as a journeyman pressman on the night shift at CCP since July 7, 1965. However, he was discharged on June 10, 1988 from this position. After filing a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) on July 18, 1988, he filed this suit. Plaintiff alleges in his complaint that CCP engaged in the following discriminatory practices: (1) white pressmen of lesser age were assigned to the day shift forcing him to work the more strenuous night shift; (2) he was denied better jobs and higher pay in favor of white men with less seniority; (3) only day shift pressman received formal training on the new ink machines thereby subjecting him, as a night shift pressman, to discipline for failing to operate the new machine properly; (4) because of this discriminatory treatment, employment became impossible and the plaintiff was discharged.

CCP has filed a motion for summary judgment seeking dismissal of plaintiff's suit. CCP also seeks attorney's fees incurred in defending this suit from the plaintiff.

■ As a condition precedent to filing this complaint alleging violations of Title VII and the Age Discrimination Act in federal court, the plaintiff must timely file a charge with the EEOC, and must receive notice of the right to sue from the EEOC. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982); *Womble v. Bhangu*, 864 F.2d 1212 (5th Cir.1989); *Pruet Production Co. v. Ayles*, 784 F.2d 1275 (5th Cir.1986). In order for a charge to be timely filed with the EEOC, the charge must be filed within 180 days after the occurrence of the alleged unlawful employment practice. 29 U.S.C. 626(d)(1); 42 U.S.C. 2000e–5; *Blumberg v. HCA Management Co. Inc.*, 848 F.2d 642 (5th Cir.1988); *Yates v. Mobile County Personnel Board*, 658 F.2d 298 (5th Cir.1981). A review of the record reveals that the plaintiff has failed to properly and timely submit all of his claims to the EEOC.

Prior to filing this complaint, James filed a charge with the EEOC which provided:

On March 2, 1988 I was placed on 90 day probation and suspended for 3 days. During April 1988 I was called derogatory names on several occasions. On June 10, 1988, I was discharged ... I was placed on probation and suspended for letting the ink run out. No reason was given for the name calling. My pink slip indicates I was discharged for misconduct ... I believe I was discriminated against because of my race, Black and age, 45 (Date of Birth: August 31, 1942).

The basis of plaintiff's charge filed with the EEOC was that he was suspended and discharged because of his race and age. However in the complaint filed in this court, plaintiff's allegations are much broader. In addition to asserting claims for wrongful suspension and discharge, he also alleges that he was denied a job on a day shift, denied better jobs and higher pay, denied training on a new machine, and wrongfully discharged. The Court must now determine if the allegations set forth in his complaint were also included in the charge plaintiff filed with the EEOC.

The Fifth Circuit Court of Appeals has held that "Title VII employment discrimination may be based, not only upon the specific complaints made by the employee's initial EEOC charge, but also upon any kind of discrimination like or related to the charge's allegations, limited only by the scope of the EEOC investigation that could reasonably be expected to grow out of the

initial charges of discrimination".[1] Plaintiff did not specifically complain to the EEOC about being denied work on a day shift or being denied a better job and pay. Moreover, these additional charges cannot reasonably be expected to have grown out of the initial EEOC charge. The Court does not believe these charges would not have been uncovered in the EEOC investigation.

Furthermore, Betty Jo Baker, the personnel manager for CCP, stated in an affidavit that the last opening for a journeyman pressman on a day shift was in February 1986. She further noted that the last opening for a better job as an assistant foreman on either the day or night shift occurred at least one year prior to James' termination.[2] Obviously the 180 day time limit on an EEOC charge had expired by the time the charge was actually filed on July 7, 1988.[3]

Since James did not file a timely EEOC charge on his allegations that he was denied work on the day shift and denied a better job and pay, he has failed to comply with proper administrative remedies. Therefore, this Court does not have jurisdiction over these claims.

■ Plaintiff also contends that he was denied formal training on new ink machines installed by CCP and that such training was restricted to day shift pressman only.[4] James did not specifically include this claim with the charge filed with the EEOC. However, such a charge could have grown out of the investigation on the discriminatory suspension and discharge charges which he initially filed with the EEOC.[5] It is unclear from the evidence now before the Court when the last formal training session occurred in for the Court to determine whether this charge was timely filed with the EEOC charge within the 180 period. James claims he was denied formal training on the machine. Night shiftmen were trained during the installation of the civilox machine from July 1986 until December 14, 1987. However, according to the affidavit of John Walker, the pressmen superintendent at CCP, all of the night shiftmen were not trained before the installation was complete.[6] Manuals for the new machine were provided to each pressman and two day shift workers were transferred to night shift for 90 days "in order to train the night shift workers on the new machine". Therefore, since this training apparently continued after December 14, 1987 to an undetermined date, the 180 day requirement may have been satisfied. Because this defense has not been satisfied to the Court's satisfaction, the merits of the plaintiff's claim must now be considered by the Court.

■ The Supreme Court set forth the requirements for such a claim in *McDonnell Douglas Corp v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). The plaintiff must prove a prima facie case of age or race discrimination. If the plaintiff succeeds, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for such treatment. Finally, if the defendant meets this burden, the plaintiff

---

**1.** Also see *Fellows v. Universal Restaurants, Inc.*, 701 F.2d 447, 451 (5th Cir.1983); *Anderson v. Lewis Rail Service Co.*, 868 F.2d 774, 775 (5th Cir.1989); *Johnson v. General Electric*, 840 F.2d 132, 139 (1st Cir.1988).

**2.** See the affidavit of Betty Jo Baker, paragraphs 2 and 3.

**3.** The plaintiff has the burden of demonstrating the factual basis for tolling. *Blumberg v. HCA Management Co., Inc.*, 848 F.2d 642 (5th Cir. 1988). Since the plaintiff has not claimed that tolling is proper in this case, the period will be maintained.

**4.** It is unclear whether plaintiff is claiming that he was denied such training due to race and age discrimination or because of discrimination against night pressmen. The Court assumes plaintiff's claim is based on race and age discrimination. Otherwise, plaintiff would have no claim based on daytime or nighttime discrimination.

**5.** *Anderson v. Lewis Rail Service Co.*, 868 F.2d 774; *Fellows v. Universal Restaurants, Inc.*, 701 F.2d 447; *Johnson v. General Electric*, 840 F.2d 132.

**6.** See Paragraph 4 of Mr. Walker's affidavit.

must show that the defendant's evidence was a mere pretext for discrimination or the evidence is not worthy of belief. Thus, James must show (1) he is a member of a protected class; (2) he was qualified to work the day shift and be trained on the civilox machine; (3) he applied for and was denied such training; (4) other employees with less qualifications who were not members of the protected class were permitted to work the day shift and train.

█ James is a black man over the age of 40 and thus fits into two protected classes.[7] He certainly seems qualified for such training since he had been working in this area for 23 years. *Bienkowski v. American Airlines, Inc.*, 851 F.2d 1503 (5th Cir.1988). The third element the plaintiff must prove is that he was denied training. As already stated, the evidence reveals that James had several opportunities for training: night shift men were moved to a day shift for training; manuals were given to each pressman; two day shift men were transferred to night shift for 90 days to train the night shift workers; and representatives of the manufacturer of the machine taught night shift employees. The plaintiff apparently did not have to be moved over to the day shift to receive such training. The Court finds that although James was not moved over to the day shift, he did have other opportunities for training on this new machine. Thus, he was not denied training. Finally, Walker listed the employees who did move to the day shift for training. Several of these employees were black. Thus, plaintiff failed to prove race discrimination. However, these employees were all below the age of 40. The ages of the employees that were trained other than by moving to a day shift were not provided to the Court to allow it to determine if any of the members of the protected class received training. Therefore, it is unclear whether the fourth element of the age discrimination claim can be proven.

The Court does not believe that James has sufficiently proven a prima facie case of age or race discrimination. However, even assuming he has done so, the defendant has met its burden of proof and come forth with sufficient evidence to rebut the presumption of discrimination. The defendant has articulated a legitimate, nondiscriminatory reason for its treatment of the plaintiff. The only type of training which was denied to James was moving him over to a day shift for training.[8] Walker stated that the reason James was not brought over to a day shift for training was because James worked during the day as a bus driver for the East Baton Rouge Parish School Board and "we knew it would cause him problems".[9] Therefore, out of consideration of James' schedule, CCP did not move him to a day shift for training. Since CCP has put forth a legitimate reason for this action, the burden now shifts back to the plaintiff to prove that the defendant's reasons are merely pretext by for its discriminatory actions or that the defendant's reason is unworthy of belief. Since James has not produced such evidence, he has failed to maintain this burden of proof.[10]

The plaintiff has the burden of proof at trial on several of the issues involved in this motion. Thus, he must come forth with sufficient evidence to show there is a genuine issue of material fact in dispute.[11] However, plaintiff has not opposed this motion for summary judgment and has failed to provide any evidence in opposition to the defendant's motion for summary judgment. According to Rule 56(e) of the Federal Rules of Civil Procedure, "an adverse party may not rest upon the mere allegations or

---

**7.** 29 U.S.C. 631 sets up the protected class in age discrimination cases as anyone over age 40.

**8.** Although, there is no evidence that James received a training manual, worked with the two day shift employees who were transferred over to the night shift to train workers, or talked to a manufacturer representative about handling this machine, he apparently had the opportunity to do any of the above.

**9.** See pages 59–60 of Walker's deposition.

**10.** *Laurence v. Chevron, U.S.A., Inc.*, 885 F.2d 280 (5th Cir.1989).

**11.** *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial". The plaintiff has not done this. Since no reasonable jury could return a verdict of age or race discrimination under the facts of this case, a summary judgment is proper on this issue.

■ Finally, James alleges that CCP wrongfully discharged him using discriminatory practices. Since the prerequisites required to bring this suit in this Court have been satisfied, the merits of this claim must be considered by the Court.[12] Plaintiff must prove that he is a member of a protected class, qualified for the position he held, discharged, and replaced by someone not a member of the protected class.[13] CCP claims that since the plaintiff did not perform his job satisfactorily, he was no longer qualified for the position he held with the defendant within the *McDonnell* test. CCP submitted the disciplinary reports of James to support this contention. The defendant also contends that following plaintiff's termination, CCP did not replace him.[14] Instead, CCP hired a black apprentice pressman but did not hire a journeyman pressman.

The Court does not believe that James has satisfied the elements of a prima facie case. But even assuming he has, the defendant has satisfied its burden of setting forth a legitimate reason for plaintiff's discharge. CCP provided the Court with all of James' disciplinary reports. These reports date back to April, 1986. Each of the reports charges plaintiff with improper handling of the ink fountain and being tardy for work. James had a history of suspensions and probations while employed at CCP. According to these reports, James was suspended for 3 days and put on a 90 day probation in March 1988 for failing to keep the ink fountain full. His probation was to last until June 10, 1988. On June 7, 1988, James again let the fountain run dry which resulted in his discharge. Each time this occurred, thousands of bad copies of the paper were printed thereby adding excess expense to CCP. The Court finds that CCP has satisfied its burden of proving a legitimate reason for terminating the plaintiff. These reasons had nothing to do with plaintiff's race.

Since the defendant has satisfied its burden of proof, the burden of proof switches back to the plaintiff who now must come forth with evidence to show that despite the defendant's contention, discrimination actually motivated the discharge. However, the plaintiff has not presented any evidence to the Court. Plaintiff has failed to satisfy this burden and a summary judgment is proper.[15] There is simply no evidence before the Court from which the Court or a reasonable jury could find that the plaintiff has proven this claim or has at least created a material issue of fact in dispute.[16]

■ CCP also seeks to recover attorney fees against James pursuant to 42 U.S.C. 2000e–5(k). The Court, in its discretion, may award attorney's fees to the prevailing party if it finds the action to be frivolous, unreasonable and without merit.[17] It is clear that an action is not unreasonable and without merit merely because the plaintiff did not prevail. The Court finds that even though the plaintiff failed to put forth any evidence in order to maintain his burden of proof, the initial claim

12. The EEOC charge was filed within 180 days of discharge and this wrongful discharge complaint was specifically alleged in the charge.

13. *McDonnell Douglas Corp. v. Green, supra; Texas Department of Community Affairs v. Burdine, supra.*

14. See paragraph 8 of Baker affidavit.

15. *Laurence v. Chevron, U.S.A., Inc.,* 885 F.2d 280.

16. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). *Celotex v. Catrett Corp., supra; Fontenot v. Upjohn Co.,* 780 F.2d 1190 (5th Cir.1986).

17. *Christiansburg Garment Co. v. E.E.O.C.,* 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978); *Bennett v. Corroon & Black Corp.,* 845 F.2d 104 (5th Cir.1988).

itself was not frivolous. Therefore, defendant's request for attorney's fees is denied.

Therefore:

IT IS ORDERED that the defendant's motion for summary judgment be and it is hereby GRANTED.

IT IS FURTHER ORDERED that the defendant's motion for attorney's fees is DENIED.

Judgment shall be entered dismissing plaintiff's suit with prejudice.